.Evan J. Smith
BRODSKY & SMITH
240 Mineola Boulevard
First Floor
Mineola, NY 11501
Telephone:    516.741.4977
Facsimile:    516.741.0626
esmith@brodskysmith.com

*Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PAUL O'NEIL, <br><br> Plaintiff, <br><br> vs. <br><br> ZEROFOX HOLDINGS, INC., JAMES C. FOSTER, TODD HEADLEY, SAM KING, ADAM GERCHEN, TOM KELLY, TERESA H. SHEA, BARBARA STEWART, and PAUL HOOPER. <br><br> Defendants. | Case No.: <br><br> **Complaint For:** <br><br> (1)  Violation of § 14 (a) of the Securities Exchange Act of 1934 <br> (2)  Violation of § 20(a) of the Securities Exchange Act of 1934 <br><br> **JURY TRIAL DEMANDED** |

Plaintiff, Paul O'Neil ("Plaintiff"), by and through his attorneys, alleges upon information and belief, except for those allegations that pertain to him, which are alleged upon personal knowledge, as follows:

### SUMMARY OF THE ACTION

1.       Plaintiff brings this stockholder action against ZeroFox Holdings, Inc. ("ZeroFox" or the "Company") and the Company's Board of Directors (the "Board" or the "Individual Defendants," and collectively with the Company, the "Defendants"), for violations of Sections 14(a) and 20(a) of the Securities and Exchange Act of 1934 (the "Exchange Act") as a result of Defendants' efforts to sell the Company to ZI Intermediate II, Inc., ("Parent") through merger

vehicle HI Optimus Merger Sub, Inc. ("Merger Sub") as a result of an unfair process, and to enjoin an upcoming stockholder vote on a proposed all cash transaction (the "Proposed Transaction"). Parent and Merger Sub are affiliates of Haveli Investments Software Fund I, L.P., a private investment fund managed by Haveli Investments L.P. (together with Parent and Merger Sub, "Haveli").

2.     The terms of the Proposed Transaction were memorialized in a February 6, 2024, filing with the Securities and Exchange Commission ("SEC") on Form 8-K attaching the Definitive Agreement and Plan of Merger (the "Merger Agreement"). Under the terms of the Merger Agreement, ZeroFox shareholders will receive only $1.14 per share in an all-cash transaction with an enterprise value of approximately $350 million.

3.     Thereafter, on March 8, 2024, the Company filed its Preliminary Proxy Statement on Schedule 14A with the United States Securities and Exchange Commission (the "SEC"). On March 18, 2024, the Company filed its Definitive Proxy Statement on Schedule DEFM 14A with the SEC (together with the Preliminary Proxy Statement, the "Proxy Statement").

4.     The Proposed Transaction is unfair for a number of reasons. Significantly, it appears as though the Board has entered into the Proposed Transaction to procure for themselves and senior management of the Company significant and immediate benefits. For example: (a) Company insiders own company options, restricted stock units, and other equity awards, all of which are subject to accelerated vesting and conversion into merger consideration; and (b) certain Company executives are entitled to severance packages, often referred to as "golden parachute" packages, entitling same to millions of dollars not shared by Plaintiff and other Company common stockholders.

5.     The Proxy Statement is materially deficient, deprives Plaintiff of the information necessary to make an intelligent, informed and rational decision of whether to vote in favor of the Proposed Transaction, and is thus in violation of the Exchange Act.  As detailed below, the Proxy Statement omits and/or misrepresents material information concerning, among other things: (a) the sales process and in particular certain conflicts of interest for management; (b) the financial projections for ZeroFox, provided by the Company to the Company's financial advisors Piper Sandler & Co. ("Piper"); and (c) the data and inputs underlying the financial valuation analyses, if any, that purport to support the fairness opinion created by Piper, and provided to the Board.

6.     Absent judicial intervention, the Proposed Transaction will be consummated, resulting in irreparable injury to Plaintiff. This action seeks to enjoin the Proposed Transaction.

## PARTIES

7.     Plaintiff is a citizen of Massachusetts and, at all times relevant hereto, has been a ZeroFox stockholder.

8.     Defendant ZeroFox engages in the provision of software-as-a-service-based external cybersecurity solutions that focuses on exposing, disrupting, and responding to threats outside the traditional corporate perimeter. ZeroFox is incorporated under the laws of the State of Delaware and has its principal place of business at 1834 S. Charles St., Baltimore, MD 21230. Shares of ZeroFox common stock are traded on the NASDAQ Capital Markets under the symbol "ZFOX."

9.     Defendant James C. Foster ("Foster") has been the Chairman of the Board of Directors of the Company at all relevant times. In addition, Defendant Foster is also the Founder and Chief Executive Officer ("CEO").

10.     Defendant Todd Headley ("Headley") has been a director of the Company at all relevant times. Defendant Headley was also appointed to the special committee of the board (the "Special Committee") in connection with the Board's consideration of pursuing a potential transaction.

11.     Defendant Sam King ("King") has been a director of the Company at all relevant times.

12.     Defendant Adam Gerchen ("Gerchen") has been a director of the Company at all relevant times.

13.     Defendant Tom Kelly ("Kelly") has been a director of the Company at all relevant times.

14.     Defendant Teresa H. Shea ("Shea") has been a director of the Company at all relevant times. Defendant Shea was also appointed to the Special Committee.

15.     Defendant Barbara Stewart ("Stewart") has been a director of the Company at all relevant times.

16.     Defendant Paul Hooper ("Hooper") has been a director of the Company at all relevant times. Defendant Hooper was also appointed to the Special Committee.

17.     Defendants identified in ¶¶ 9-16 are collectively referred to as the "Individual Defendants."

18.     Non-Party Parent is an affiliate of Haveli Investments L.P.

19.     Non-Party Merger Sub is a wholly owned subsidiary of Parent created to effectuate the Proposed Transaction.

## JURISDICTION AND VENUE

20.     This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act.  This action is not a collusive one to confer jurisdiction on a court of the United States, which it would not otherwise have.  The Court has supplemental jurisdiction over any claims arising under state law pursuant to 28 U.S.C. § 1367.

21.     Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

22.     Venue is proper in this District pursuant to 28 U.S.C. § 1391, because each of the Individual Defendants, as Company officers or directors, has extensive contacts within this District; for example, the Company's stock trades on the NASDAQ Stock Exchange which is headquartered in this District.

## SUBSTANTIVE ALLEGATIONS

***Company Background***

23.     Defendant ZeroFox engages in the provision of software-as-a-service-based external cybersecurity solutions that focuses on exposing, disrupting, and responding to threats outside the traditional corporate perimeter.

24.     In August 2022, the Company consummated a business combination agreement (the "ZFOX DESPAC") with L&F Acquisition Corp. ("L&F") and ID Experts Holdings, Inc.

("IDX") in which IDX was subsumed by the Company which then merged with and into L&F and became a publicly traded Company.

25.     At the close of the deal, the Company stock was trading at $13.75 per share.

26.     Thereafter, on December 6, 2022 the Company released its Q3 Fiscal Year 2023 financial results in which it highlighted record setting revenues and annual recurring revenues. The stock was trading at $4.07 per share.

27.     On March 14, 2023, the Company released its Q4 Fiscal Year 2023 financial results revealing yet another record setting quarter. The stock, however, was trading at $1.25 per share.

28.     On April 24, 2023 ZeroFox announced that it had completed the acquisition of LookingGlass Cyber Solutions, Inc. ("LookingGlass") for approximately $26 million.

29.     Thereafter, on May 15, 2023, the Company announced that through LookingGlass it had expanded its contract with a U.S. Federal Department of Defense Agency (the "DOD Agency").

30.     On June 6, 2023, the Company released its Q1 Fiscal Year 2024 financial results revealing yet another record setting quarter. Despite yet another successful quarter, the Company's stock was now trading at $1.19 per share.

31.     On September 6, 2023, the Company released its Q2 Fiscal Year 2024 financial results revealing yet another record setting quarter along with positive free cash flow. The Company's stock was trading at $1.06 per share.

32.     On October 24, 2023, the Company announced it had again expanded its 8-figure contract with the DOD Agency.

33.     The Company's most recent financial performance press release, revealing financial results from the quarter preceding the announcement of the Proposed Transaction, indicated sustained and solid financial performance. For example, in the December 5, 2023, press

release announcing its 2023 Q3 financial results, the Company highlighted such milestones as: Total revenue was $65.0 million; and Annual Recurring Revenue was $185.9 million.

34.     Speaking on these positive results, CEO Defendant Foster commented on the Company's positive financial results as follows, "Q3 was another positive quarter for ZeroFox where we experienced strong top line growth while also generating positive free cash flow for the second consecutive quarter."

35.     CEO Defendant Foster continued that sentiment by stating, "Our results validate that customers are increasingly seeking a converged, external cybersecurity platform to address complex, evolving cyber threats outside the perimeter. We believe we are the only AI-enabled platform that successfully combines Digital Risk Protection, Threat Intelligence, External Attack Surface Management, and Disruption to protect our growing customer base at scale. The breadth of our platform combined with our strength in on-demand response services positions us well for continued growth in the external cybersecurity market."

36.     Thereafter, on January 4, 2024, the Company announced it had been awarded a $289 million contract from the U.S. Office of Personnel Management for Digital Identity Protection Services (the "OPM Contract") which extends the partnership through September 30, 2028.

37.     These positive results are not an anomaly, but rather, are indicative of a trend of continued financial success by ZeroFox. Based upon these positive financial results and outlook, the Company is likely to have future success.

*The Flawed Sales Process*

38.     As detailed in the Proxy Statement, the process deployed by the Individual Defendants was flawed and inadequate, was conducted out of the self-interest of the Individual Defendants and was designed to effectuate a sale of the Company to Haveli

39.     In addition, the Proxy Statement is silent as to the nature of the confidentiality agreement entered into between the Company and Haveli and whether this agreement differed from any other agreement with potentially interested third parties discussed and/or not specifically mentioned by the Proxy Statement, if so in all specific manners.

40.     Moreover, the Proxy Statement fails to adequately disclose any and all communications regarding post-transaction employment during the negotiation of the underlying transaction.

41.     It is not surprising, given this background to the overall sales process, that it was conducted in an inappropriate and misleading manner.

*The Proposed Transaction*

42.     On February 6, 2024, ZeroFox and Haveli issued a joint press release announcing the Proposed Transaction. The press release stated, in relevant part:

> WASHINGTON, Feb. 06, 2024 (GLOBE NEWSWIRE) -- ZeroFox Holdings, Inc. (Nasdaq: ZFOX) ("ZeroFox"), a leading provider of external cybersecurity, today announced that it has entered into a definitive agreement to be acquired by Haveli Investments, a technology-focused private equity firm, in an all-cash transaction with an enterprise value of approximately $350 million.
>
> Under the terms of the merger agreement, ZeroFox stockholders will receive $1.14 per share in cash upon completion of the transaction. The per share purchase price represents a premium of 45% over the volume weighted average price for the 90-day period ending February 2, 2024.
>
> "We are on a mission to protect our customers from advanced external cybersecurity threats. The volume and sophistication of these attacks continue to increase each week, and our customers need true partners that are aligned with them for years to come," said James C. Foster, Founder, Chairman and Chief Executive Officer of ZeroFox. "With Haveli Investments, ZeroFox has identified a strong

partner with the right combination of high growth software experience, strategic and operational resources, and a shared passion and commitment to external cybersecurity. We believe that this transaction represents a compelling outcome for ZeroFox stockholders, particularly given the volatility in the market, and best positions ZeroFox for our next phase of growth."

"We're excited to partner with ZeroFox, a leader in Digital Risk Protection and Threat Intelligence," said Ian Loring, Senior Managing Director and Executive Chair of the Haveli Investments Software Fund. "ZeroFox's innovative solutions enable organizations to proactively identify, manage, and remediate external digital threats at scale. With a large and expanding customer base, and consistent growth, ZeroFox is well positioned in an important and expanding category. We look forward to working closely with ZeroFox's talented leadership team to propel the company into its next phase of growth as the cybersecurity landscape continues to evolve."

"A special committee of the ZeroFox board conducted a thorough evaluation of capital structure alternatives, which included multiple discussions and interactions with a number of financial and strategic partners," said Todd Headley, Lead Independent Director of the ZeroFox Board of Directors. "During this comprehensive process it became clear that partnering with Haveli Investments was the best path forward for customers, employees, and maximizing stockholder value."

**Transaction Details**

The transaction, which was unanimously approved and recommended by a Special Committee comprised of independent members of ZeroFox's Board of Directors and unanimously approved by ZeroFox's Board of Directors, is expected to close in the first half of 2024, subject to customary closing conditions, including approval by ZeroFox stockholders and the receipt of required regulatory approvals.

The transaction is not subject to a financing condition.

Upon completion of the transaction, ZeroFox's common stock will no longer be publicly listed on the Nasdaq Global Market, and ZeroFox will become a privately held company.

*Potential Conflicts of Interest*

43.     The breakdown of the benefits of the deal indicates that ZeroFox insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders such as Plaintiff. The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff as a public stockholder of ZeroFox.

44.     In addition, Company insiders currently own company options, restricted stock units, and other equity awards, all of which will be subject to accelerated vesting upon the consummation of the Proposed Transaction, and converted into the Merger Consideration not shared with public Company stockholders such as Plaintiff upon the consummation of the Proposed Transaction as follows:

| Name of Director or Officer | In-the-money Company Options | | Company RSUs | | Total Amount Payable ($) |
|---|---|---|---|---|---|
| | Number of options held | Amount Payable ($) | Number of RSUs held | Amount Payable ($) | |
| James C. Foster, *Chief Executive Officer, Chairman of the Board* | — | — | 1,754,561 | $2,000,199.54 | $2,000,199.54 |
| Adam Gerchen, *Director* | — | — | 43,000 | $ 49,020 | $ 49,020 |
| Todd P. Headley, *Lead Independent Director* | — | — | 43,000 | $ 49,020 | $ 49,020 |
| Thomas F. Kelly, *Director* | — | — | 43,000 | $ 49,020 | $ 49,020 |
| Samskriti King, *Director* | — | — | 43,000 | $ 49,020 | $ 49,020 |
| Paul Hooper, *Director* | — | — | 43,000 | $ 49,020 | $ 49,020 |
| Teresa H. Shea, *Director* | — | — | 43,000 | $ 49,020 | $ 49,020 |
| Barbara Stewart, *Director* | — | — | 43,000 | $ 49,020 | $ 49,020 |
| Timothy S. Bender, *Chief Financial Officer and Treasurer* | 620,479 | $240,027.51 | 706,203 | $ 805,071.42 | $1,045,098.93 |
| Thomas P. FitzGerald, *General Counsel & Corporate Secretary* | — | — | 455,473 | $ 519,239.22 | $ 519,239.22 |
| Scott O'Rourke, *Chief Revenue Officer* | 493,252 | $147,465.97 | 610,583 | $ 696,064.62 | $ 843,530.59 |
| John R. Prestridge III, *Chief Product Officer* | — | — | 328,101 | $ 374,035.14 | $ 374,035.14 |
| Michael M. Price, *Chief Technology Officer* | 654,981 | $268,675.67 | 610,583 | $ 696,064.62 | $ 964,740.29 |
| Kevin T. Reardon, *Chief Operating Officer* | — | — | 610,583 | 696,064.62 | $ 696,064.62 |

45.     In addition, employment agreements with certain ZeroFox executives entitle such executives to severance packages should their employment be terminated under certain circumstances. These 'golden parachute' packages are significant and will grant each director or officer entitled to them millions of dollars, compensation not shared by Plaintiff.

46.     The Proxy Statement also fails to adequately disclose the totality of the communications regarding post-transaction employment during the negotiation of the underlying transaction. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders.

47.     This information is necessary for Plaintiff to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

48.     Thus, while the Proposed Transaction is not in the best interests of ZeroFox, Plaintiff or Company stockholders, it will produce lucrative benefits for the Company's officers and directors.

***The Materially Misleading and/or Incomplete Proxy Statement***

49.     On March 18, 2024, the ZeroFox Board caused to be filed with the SEC a materially misleading and incomplete Proxy Statement that, in violation the Exchange Act, failed to provide Plaintiff in his capacity as a Company stockholder with material information and/or provides materially misleading information critical to the total mix of information available to Plaintiff concerning the financial and procedural fairness of the Proposed Transaction.

*Omissions and/or Material Misrepresentations Concerning the Sales Process leading up to the Proposed Transaction*

50.     The Proxy Statement fails to disclose material information concerning the process conducted by the Company and the events leading up to the Proposed Transaction. In particular, the Proxy Statement fails to disclose:

a.   Whether the confidentiality agreements entered into by the Company with Haveli differed from any other unnamed confidentiality agreement entered into between the Company and potentially interested third parties (if any), and if so, in all specific manners;

b.   Any and all communications regarding post-transaction employment during the negotiation of the underlying transaction.

51.   This information is necessary for stockholders to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of Plaintiff and Company stockholders.

*Omissions and/or Material Misrepresentations Concerning ZeroFox's Financial Projections*

52.   The Proxy Statement fails to provide material information concerning financial projections for ZeroFox provided by ZeroFox management to the Board and Piper and relied upon by Piper in its analyses. The Proxy Statement discloses management-prepared financial projections for the Company which are materially misleading.

53.   Notably the Proxy Statement reveals that as part of its analyses, Piper reviewed, "certain information, including financial forecasts, relating to the business, earnings, cash flow, assets, liabilities and prospects of ZeroFox that were publicly available, as well as those that were furnished to Piper by ZeroFox (referred to in this proxy statement as the "January 2024 Projections")."

54.   Therefore, the Proxy Statement should have, but fails to provide, certain information in the projections that ZeroFox management provided to the Board and Piper. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors.  Investors can come up with their own estimates of discount rates or [] market multiples.  What they cannot hope to do is replicate management's inside view of the company's prospects."  *In re Netsmart Techs., Inc. S'holders Litig*., 924 A.2d 171, 201-203 (Del. Ch. 2007).

55.     With regard to the *October 2023 Projections* provided by ZeroFox Management, the Proxy Statement fails to disclose material line items for the following metrics:

     a.  Subscription Revenue, including all underlying inputs, metrics, and assumptions used to calculate same;

     b.  Services Revenue, including all underlying inputs, metrics, and assumptions used to calculate same;

     c.  Total Revenue, including all underlying inputs, metrics, and assumptions used to calculate same;

     d.  Adjusted EBITDA, including all underlying inputs, metrics, and assumptions used to calculate same i; and

     e.  Free Cash Flow, including all underlying inputs, metrics, and assumptions used to calculate same.

56.     With regard to the *January 2024 Projections* provided by ZeroFox Management, the Proxy Statement fails to disclose material line items for the following metrics:

     a.  Subscription Revenue, including all underlying inputs, metrics, and assumptions used to calculate same;

     b.  Services Revenue, including all underlying inputs, metrics, and assumptions used to calculate same;

     c.  Total Revenue, including all underlying inputs, metrics, and assumptions used to calculate same;

     d.  Adjusted EBITDA, including all underlying inputs, metrics, and assumptions used to calculate same;

e.   Free Cash Flow, including all underlying inputs, metrics, and assumptions used to calculate same;

f.   Unlevered Free Cash Flow—Platform, including all underlying inputs, metrics, and assumptions used to calculate same, including specifically: cash paid for interest and other financing; and

g.   Unlevered Free Cash Flow—Response, including all underlying inputs, metrics, and assumptions used to calculate same.

57.   As set forth in the Proxy Statement, on or around October 13, 2023, during a meeting of the Company Board and the Company's management, the Company's Chief Financial Officer ("CFO"), Timothy S. Bender, presented a draft financial model to the Special Committee and the Special Committee gave feedback regarding the same. However, the Proxy Statement fails to disclose what the feedback was, and how the model changed subsequent to the Special Committee's discussion with the CFO.

58.   The Proxy Statement fails to explain the decision to lower financial expectations in the October 2023 and January 2024 Projections.

59.   Moreover, the Proxy Statement fails to disclose Management's reason for lowering the projections from October 2023 to January 2024 despite the positive Q3 financial results and the Company extending its Government Contract through 2028.

60.   The Proxy Statement fails to disclose what Management's basis was for lowering the projections for the Platform Business between the July 2022 projections and the January 2024 Projections.

61.   The Proxy Statement also fails to disclose a reconciliation of all non-GAAP to GAAP metrics utilized in the projections.

62.     This information is necessary to provide Plaintiff in his capacity as a Company stockholder with a complete and accurate picture of the sales process and its fairness. Without this information, Plaintiff is not fully informed as to Defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the process.

63.     Without accurate projection data presented in the Proxy Statement, Plaintiff is unable to properly evaluate the Company's true worth, the accuracy of Piper financial analyses, or make an informed decision whether to vote in favor of the Proposed Transaction. As such, the Board has violated the Exchange Act by failing to include such information in the Proxy Statement.

_Omissions and/or Material Misrepresentations Concerning the Financial Analyses by Piper_

64.     In the Proxy Statement, Piper describes its fairness opinion and the various valuation analyses performed to render such opinion. However, the descriptions fail to include necessary underlying data, support for conclusions, or the existence of, or basis for, underlying assumptions. Without this information, one cannot replicate the analyses, confirm the valuations, or evaluate the fairness opinions.

65.     With respect to _Platform Business Analyses,_ the Proxy Statement fails to disclose the following:

    a.  Regarding the _Selected Public Companies Analysis_, disclose:

        i.  The underlying metrics observed for each of the Public Companies Analyzed;

        ii. The underlying inputs, metrics, and assumptions used to determine the high and low end EVs of $282 million and $224 million for the calendar year 2023; and

iii. The underlying inputs, metrics, and assumptions used to determine the high and low end EVs of $339 million and $260 million for the calendar year 2024.

b. Regarding the *Selected M&A Transactions Analysis*, disclose:

i. The specific date on which each selected transaction was consummated;

ii. The aggregate value of each selected transaction; and

iii. The underlying inputs, metrics, and assumptions used to determine the high and low end EVs of $358 million and $292 million.

c. Regarding the *Discounted Cash Flow Analysis*, disclose:

i. The specific inputs, metrics, and assumptions used to determine the utilized perpetuital growth rates ranging from 3.75% to 4.25%;

ii. The specific inputs, metrics, and assumptions used to determine the utilized discount rate range of 14.2% to 15.2%;

iii. The underlying inputs, metrics, and assumptions used to determine ZeroFox's weighted average cost of capital utilized;

iv. The terminal value for ZeroFox, calculated; and

v. The underlying inputs, metrics, and assumptions used to determine the implied high and low end EVs of $265 million and $222 million.

66. With respect to *Response Business Analyses,* the Proxy Statement fails to disclose the following:

a. Regarding the *Discounted Cash Flow Analysis*, disclose:

i. The specific inputs, metrics, and assumptions used to determine the utilized discount rate range of 20.1%;

ii.   The underlying inputs, metrics, and assumptions used to determine ZeroFox's weighted average cost of capital utilized;

iii.  The projected terminal value at fiscal year 2029 for ZeroFox, calculated; and

iv.   The underlying inputs, metrics, and assumptions used to determine the high and low end net present values of cash flows for the Response business of $74 million and 34 million.

67.   With Respect to the *Whole Company Analyses*, the proxy Statement fails to disclose the following:

a.   Regarding the *Sum-of-the-Parts Analysis,* disclose:

i.   The underlying inputs, metrics, and assumptions used to determine the CY2023 high and low end per share value of $1.35 and $0.66 respectively;

ii.   The underlying inputs, metrics, and assumptions used to determine the CY2024 high and low end per share value of $1.75 and $0.91 respectively;

iii.  The underlying inputs, metrics, and assumptions used to determine the M&A Transactions Analysis high and low end per share value of $1.88 and $1.14 respectively; and

iv.   The underlying inputs, metrics, and assumptions used to determine the Platform DCF Analysis high and low end per share value of $1.23 and $0.64 respectively.

b.   Regarding the *Selected Public Companies Analysis*, disclose:

     i. The underlying metrics observed for each of the Public Companies Analyzed;

    ii. The underlying inputs, metrics, and assumptions used to determine the high and low end per share equity value of $1.19 and $1.09 for the calendar year 2023; and

   iii. The underlying inputs, metrics, and assumptions used to determine the high and low end per share equity value of $1.24 and $1.16 for the calendar year 2024

c. Regarding the *Premiums Paid Analysis*, disclose:

     i. The specific companies analyzed;

    ii. The date each of the analyzed transactions were announced;

   iii. The underlying inputs, metrics, and assumptions used to determine the Technology De-SPACs 30-day VWAP Premium mean and median of 25% and 31% respectively;

   iv. The underlying inputs, metrics, and assumptions used to determine the Cybersecurity (>500m Revenue) 30-day VWAP Premium mean and median of 32% and 33% respectively;

    v. The underlying inputs, metrics, and assumptions used to determine the Net Debt Exceeding Market Capitalization 30-day VWAP Premium mean and median of 27% and 2% respectively;

   vi. The underlying inputs, metrics, and assumptions used to determine the ZeroFox Common Stock Closing Price at February 2, 2024 30-day VWAP Premium median of 9%; and

vii.  The underlying inputs, metrics, and assumptions used to determine the ZeroFox at merger consideration 30-day VWAP Premium median of 31%.

68.    The Proxy Statement fails to disclose Piper's reasoning for failing to provide a Selected M&A Transactions Analysis for the *Whole Company* as it did for the Comparable Company analysis.

69.    These disclosures are critical for Plaintiff to be able to make an informed decision on whether to vote in favor of the Proposed Transaction.

70.    Without the omitted information identified above, Plaintiff is missing critical information necessary to evaluate whether the Proposed Transaction truly maximizes his value and serves his interest as a stockholder. Moreover, without the key financial information and related disclosures, Plaintiff cannot gauge the reliability of the fairness opinion and the Board's determination that the Proposed Transaction is in his best interests as a public ZeroFox stockholder. As such, the Board has violated the Exchange Act by failing to include such information in the Proxy Statement.

**FIRST COUNT**

**Violations of Section 14(a) of the Exchange Act**

**(Against All Defendants)**

71.    Plaintiff repeats all previous allegations as if set forth in full herein.

72.    Defendants have disseminated the Proxy Statement with the intention of soliciting stockholders, including Plaintiff, to vote in favor of the Proposed Transaction.

73.    Section 14(a) of the Exchange Act requires full and fair disclosure in connection with the Proposed Transaction. Specifically, Section 14(a) provides that:

It shall be unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78*l* of this title.

74.    As such, SEC Rule 14a-9, 17 C.F.R. 240.14a-9, states the following:

No solicitation subject to this regulation shall be made by means of any proxy statement, form of proxy, notice of meeting or other communication, written or oral, containing any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading.

75.    The Proxy Statement was prepared in violation of Section 14(a) because it is materially misleading in numerous respects and omits material facts, including those set forth above. Moreover, in the exercise of reasonable care, Defendants knew or should have known that the Proxy Statement is materially misleading and omits material facts that are necessary to render them non-misleading.

76.    The Individual Defendants had actual knowledge or should have known of the misrepresentations and omissions of material facts set forth herein.

77.     The Individual Defendants were at least negligent in filing a Proxy Statement that was materially misleading and/or omitted material facts necessary to make the Proxy Statement not misleading.

78.     The misrepresentations and omissions in the Proxy Statement are material to Plaintiff, and Plaintiff will be deprived of his entitlement to decide whether to vote his shares in favor of the Proposed Transaction on the basis of complete information if such misrepresentations and omissions are not corrected prior to the stockholder vote regarding the Proposed Transaction.

## SECOND COUNT

### Violations of Section 20(a) of the Exchange Act

### (Against all Individual Defendants)

79.     Plaintiff repeats all previous allegations as if set forth in full herein.

80.     The Individual Defendants were privy to non-public information concerning the Company and its business and operations via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board meetings and committees thereof and via reports and other information provided to them in connection therewith. Because of their possession of such information, the Individual Defendants knew or should have known that the Proxy Statement was materially misleading to Plaintiff in his capacity as a Company stockholder.

81.     The Individual Defendants were involved in drafting, producing, reviewing and/or disseminating the materially false and misleading statements complained of herein.  The Individual Defendants were aware or should have been aware that materially false and misleading statements were being issued by the Company in the Proxy Statement; and nevertheless, approved, ratified and/or failed to correct those statements, in violation of federal securities laws. The Individual

Defendants were able to, and did, control the contents of the Proxy Statement. The Individual Defendants were provided with copies of, reviewed and approved, and/or signed the Proxy Statement before its issuance and had the ability or opportunity to prevent its issuance or to cause it to be corrected.

82.     The Individual Defendants also were able to, and did, directly or indirectly, control the conduct of ZeroFox's business, the information contained in its filings with the SEC, and its public statements. Because of their positions and access to material non-public information available to them but not the public, the Individual Defendants knew or should have known that the misrepresentations specified herein had not been properly disclosed to and were being concealed from Plaintiff and Company, and that the Proxy Statement was misleading.  As a result, the Individual Defendants are responsible for the accuracy of the Proxy Statement and are therefore responsible and liable for the misrepresentations contained herein.

83.     The Individual Defendants acted as controlling persons of ZeroFox within the meaning of Section 20(a) of the Exchange Act.  By reason of their position with the Company, the Individual Defendants had the power and authority to cause ZeroFox to engage in the wrongful conduct complained of herein. The Individual Defendants controlled ZeroFox and all of its employees.  As alleged above, ZeroFox is a primary violator of Section 14 of the Exchange Act and SEC Rule 14a-9. By reason of their conduct, the Individual Defendants are liable pursuant to section 20(a) of the Exchange Act.

WHEREFORE, Plaintiff demands injunctive relief, in his favor and against the Defendants, as follows:

A.     Enjoining the Proposed Transaction;

B.     In the event Defendants consummate the Proposed Transaction, rescinding it and

setting it aside or awarding rescissory damages to Plaintiff;

C.       Directing the Individual Defendants to exercise their fiduciary duties to disseminate a Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D.       Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.       Granting such other and further relief as this Court may deem just and proper.

### DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury on all issues which can be heard by a jury.

Dated: April 1, 2024                                **BRODSKY & SMITH**

By: *Evan J. Smith*
                                                     Evan J. Smith
                                                     240 Mineola Boulevard
                                                     Mineola, NY 11501
                                                     Phone:  (516) 741-4977
                                                     Facsimile (561) 741-0626

                                                     *Counsel for Plaintiff*